**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**JOHN LEM,**

                            **Plaintiff,**

   vs.                                                 05-CV-1453
                                                              (NAM/GHL)

**MICHAEL J. ASTRUE\*,**
**COMMISSIONER OF SOCIAL SECURITY,**

                            **Defendant.**
_____

**APPEARANCES:**                            **OF COUNSEL:**

Erwin, McCane & Daly                    Thomas C. Erwin, Esq.
23 Elk Street
Albany, New York 12207
*Attorney for Plaintiff*

Andrew T. Baxter                         William H. Pease, Esq.
Acting United States Attorney for
the Northern District of New York
P.O. Box 7198
100 South Clinton Street
Syracuse, New York 13261-7198
*Attorney for Defendant*

Office of General Counsel               Barbara Spivak, Esq.
Social Security Administration         Tomasina DiGrigoli, Esq.
26 Federal Plaza
New York, New York 10278
*Attorney for Defendant*

    \*\* On February 12, 2007, Michael J. Astrue was sworn in as Commissioner of the Social Security Administration.  Pursuant to Federal Rule of Civil Procedure 25(d)(1), he is automatically substituted for former Commissioner Joanne B. Barnhart as the defendant in this action.

**NORMAN A. MORDUE, Chief U.S. District Judge:**

                                **MEMORANDUM-DECISION AND ORDER**

**I.    INTRODUCTION**

Plaintiff John Lem brings the above-captioned action pursuant to 42 U.S.C. § 405(g) of the Social Security Act, seeking review of the Commissioner of Social Security's decision to deny his application for disability insurance benefits ("DIB") and supplemental security income benefits ("SSI"). (Dkt. No. 1). Presently before the Court are the parties' motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

**II.   PROCEDURAL HISTORY**

Plaintiff protectively filed an application for SSI on June 9, 2003 and filed an application for DIB on July 23, 2003. (Administrative Transcript at p. 38).[1] The applications were denied on February 4, 2004. (T. 27). Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") which was held on November 23, 2004. (T. 33). On December 23, 2004, ALJ Carl E. Stephan issued a decision denying plaintiff's claim for benefits. (T. 15-21). The Appeals Council denied plaintiff's request for review on October 28, 2005, making the ALJ's decision the final determination of the Commissioner. (T. 4). This action followed.

**III.  FACTUAL BACKGROUND**

Plaintiff was born on August 2, 1962 and was 42 years old at the time of the administrative hearing on November 23, 2004. (T. 15, 38). Plaintiff lives with his mother and brother in a house rented by his mother. (T. 70, 144). Plaintiff is not married and does not have any children. (T. ).

In 1993 or 1994, plaintiff obtained a degree in computer-aided drafting from a trade school. (T. 144). In June 1995, plaintiff received his GED. (T. 67). In 2001, plaintiff was employed by Golub Corporation as a "selector". (T. 146). Plaintiff was employed by Golub for

---

[1] Portions of the administrative transcript, Dkt. No. 6, will be cited herein as "(T___)."

13 weeks before he was allegedly injured while working on March 4, 2001. (T. 146). In June 2002, plaintiff was employed by Pfohl Enterprises as a carpenter. (T. 46). From June 2002 until October 2002, plaintiff was employed at Monroe Muffler as an Assistant Manager/Technician. (T. 146). The last day plaintiff was employed in any capacity was October 9, 2002. (T. 54). Plaintiff alleges that he became disabled on March 4, 2001 due to back, hand and vision impairments. (T. 15).

### A. Medical Treatment

On March 28, 2001, plaintiff was examined by Dr. Shawn C. Smith, a chiropractor affiliated with Middleburgh Chiropractic. (T. 130). Dr. Smith diagnosed plaintiff with sciatica and performed "spinal manipulations".[2] (T. 130). Plaintiff received approximately 50 treatments from Dr. Smith from March 2001 until September 2004. (T. 105 - 130).

On May 31, 2001, plaintiff was examined by Dr. Brian Gordon, an orthopedist affiliated with Schenectady Regional Orthopedic Associates, P.C. (T. 104). Plaintiff complained of left lower extremity pain with numbness in his thigh. (T. 104). Plaintiff advised Dr. Gordon that his back pain was improving and that he was treating with a chiropractor which was "helping his back discomfort". (T. 104). Plaintiff stated that he injured his back at work while lifting a box of chickens. (T. 104). Plaintiff advised Dr. Gordon that he went back to work on light duty for one day but that it caused exacerbation in his pain. (T. 104). Plaintiff stated he was taking an anti-inflammatory and muscle relaxant which gave "some benefit".[3] (T. 104). Upon examination, Dr. Gordon noted plaintiff was "in some discomfort" and that plaintiff was able to walk on his heels

---

[2] Sciatica is syndrome characterized by pain radiating from the back into the buttock and into the lower extremity along its posterior or lateral aspect, and most commonly caused by protrusion of a low lumbar intervertebral disk; the term is also used to refer to pain anywhere along the course of the sciatic nerve. *Dorland's Illustrated Medical Dictionary*, 1703 (31st ed. 2007).

[3] The record does not indicate the names of the medication(s) or the identity of the prescribing physician(s).

and toe and flex to the mid femur. (T. 104). Dr. Gordon observed pain on palpation of the lumbar spine with sensation decreased at L3, L4 and L5. (T. 104). Dr. Gordon noted that an "MRI from 3/20, by report, did not reveal a disc herniation or stenosis. No sponylolisthesis."[4] (T. 104). Dr. Gordon diagnosed plaintiff with "LLE pain and numbness with a reportedly normal MRI". (T. 104). Dr. Gordon scheduled plaintiff for a CT myelogram and advised plaintiff to continue taking anti-inflammatories.[5] (T. 104). Dr. Gordon advised plaintiff to stay "out of work at this time". (T. 104).

On June 26, 2001, plaintiff returned for a second visit with Dr. Gordon. (T. 102). Dr. Gordon noted plaintiff complained of LLE numbness which was "better with standing". (T. 102). Dr. Gordon stated that the CT myelogram revealed "disc bulge at L4-5 far lateral disc protrusion to the right and a nodular process of the right S1 nerve root, possibly representing a neural fibroma or arachnoid granulation".[6] (T. 102). Dr. Gordon stated that "I do not have an explanation for his LLE symptoms". (T. 102). Dr. Gordon advised plaintiff to return to light duty on July 2nd with a 25 pound weight restriction. (T. 102). Dr. Gordon noted that he "did not have much to offer at this point, given the lack of anatomical findings which would explain his LLE discomforts". (T. 102). Dr. Gordon referred plaintiff for a neurological consult and advised plaintiff to return "as needed".[7] (T. 102, 131).

**B.    Consultative Examinations**

---

[4] The record does not contain a report or record of the MRI study. Spondylolisthesis is forward displacement of one vertebra over another, usually of the fifth lumbar over the body of the sacrum, usually due to a developmental defect. *Dorland's* at 1779.

[5] A myelogram is a radiograph of the spinal cord. *Id.* at 1238.

[6] The record does not contain any report or record of the myelogram.

[7] There is no record of any neurological evaluation or treatment.

On September 15, 2003, Dr. Christopher Gabriels performed an eye examination of plaintiff at the request of the New York State Department of Temporary and Disability Assistance.[8] (T. 87). Dr. Gabriels noted that plaintiff previously had surgery following an injury to his right eye and surgery as a child for "cross-eyes". (T. 87). Upon examination, Dr. Gabriels noted plaintiff's vision was 20/100 on the right and 20/20 on the left. (T. 87). Dr. Gabriels opined that plaintiff had a full-thickness corneal scar from a prior injury that compromised his vision on the right. (T. 88). Dr. Gabriels concluded that plaintiff also suffered from traumatic mydriasis and amblyopia.[9] (T. 88). Dr. Gabriels stated that plaintiff may need a corneal transplant on the right however, plaintiff's left eye was "absolutely normal". (T. 88).

On September 23, 2003, Dr. Amelita Balagtas performed an orthopedic evaluation of plaintiff at the request of the Division of Disability Determination. (T. 91). Plaintiff presented complaints of low back pain which he alleged began on March 4, 2001. (T. 91). Plaintiff claimed that he lifted a box of chicken at work and felt pain in his low back. (T. 91). Plaintiff described the pain as "shooting to his hips" with numbness in his left leg. (T. 91). Plaintiff complained of a decreased sensation in the left lower leg and left foot. (T. 92). Plaintiff advised that he was treating with a chiropractor every 2 weeks but denied taking any medication. (T. 91). Plaintiff advised that he lived with his mother and was able to perform self-care and drive. (T. 91).

Upon examination, Dr. Balagtas noted plaintiff's gait was normal and found that plaintiff was able to perform a heel and toe walk. (T. 92). Dr. Balagtas noted that plaintiff needed no assistance climbing on or off of the examination table. (T. 92). Dr. Balagtas noted that plaintiff's

---

[8] Plaintiff alleges that Dr. Gabriels is an ophthalmologist. However, the record does not indicate whether or not Dr. Gabriels was specialized in any area of medicine.

[9] Mydriasis is an abnormal dilatation of the pupil. *Dorland's* at 1236. Amblyopia is an impairment of vision without detectable organic lesion of the eye. *Id*. at 58.

5

range of motion was full at both hips, knees and ankles. (T. 92). Dr. Balagtas found plaintiff's strength to be "5/5" with no muscle atrophy in either lower extremity. (T. 92). Dr. Balagtas detected no joint effusion, inflammation or instability. (T. 92). Dr. Balagtas noted that forward flexion in plaintiff's lumbar spine was limited to 45 degrees due to pain. (T. 92). Dr. Balagtas detected positive straight leg raising at 45 degrees on the left and 60 degrees on the right with tenderness over the left lumbar region. (T. 92).

Plaintiff complained of decreased sensation of the right forearm and hand. (T. 92). Dr. Balagtas examined plaintiff's upper extremities and found full range of motion in both shoulders, elbows, forearms and wrists. (T. 92). Dr. Balagtas noted a healed surgical scar on the right forearm which plaintiff claimed was from an injury in 1986 or 1987. (T. 92). Dr. Balagtas noted no joint inflammation, effusion or instability with strength of "5/5". (T. 92). Dr. Balagtas found mild atrophy of the intrinsic muscles of the right hand. (T. 92).

Dr. Balagtas diagnosed plaintiff with low back pain and requested an x-ray to determine "disc space pathology". (T. 93). Dr. Balagtas opined that plaintiff would have some limitations in activities that required bending, lifting, prolonged sitting or standing. (T. 93). On September 23, 2003, an x-ray taken of plaintiff's lumbar spine revealed no bony or disc space pathology. (T. 94).

### C.    Residual Functional Capacity Assessment

On October 27, 2003, T. Raymond, a medical consultant for the agency, completed a Physical Residual Functional Capacity ("RFC") Assessment. (T. 95). The consultant opined that plaintiff could occasionally lift and/or carry 20 pounds; frequently lift and/or carry 10 pounds; stand and/or walk for 6 hours in an 8 hour workday; and sit for 6 hours in an 8 hour workday. (T. 96). The consultant found that plaintiff had no restrictions with pushing or pulling. (T. 96). The

consultant further found that plaintiff's "RFC impacted upon in [sic] rt. eye only" and that "pain and decreased ROM would impact on RFC as indicated". (T. 96-97). The consultant opined that the findings did not support plaintiff's claim that he was restricted to walking 10 yards with a half hour rest period. (T. 98). Therefore, the consultant stated that the restriction was "deemed not credible". (T. 98). The consultant noted that the record did not contain a treating or examining source statement on plaintiff's physical capabilities. (T. 99).

## IV.     ADMINISTRATIVE LAW JUDGE'S DECISION

The Social Security Act (the "Act") authorizes payment of disability insurance benefits to individuals with "disabilities." The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A). There is a five-step analysis for evaluating disability claims:

> "In essence, if the Commissioner determines (1) that the claimant is not working, (2) that he has a 'severe impairment,' (3) that the impairment is not one [listed in Appendix 1 of the regulations] that conclusively requires a determination of disability, and (4) that the claimant is not capable of continuing in his prior type of work, the Commissioner must find him disabled if (5) there is not another type of work the claimant can do." The claimant bears the burden of proof on the first four steps, while the Social Security Administration bears the burden on the last step.

*Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003) (quoting *Draegert v. Barnhart*, 311 F.3d 468, 472 (2d Cir. 2002)); *Shaw v. Chater*, 221 F.3d 126, 132 (2d Cir. 2000) (internal citations omitted).

In this case, the ALJ found at step one that plaintiff has not engaged in substantial gainful activity since his alleged onset date. (T. 16). At step two, the ALJ concluded that plaintiff's "back is a severe impairment". (T. 20). At the third step of the analysis, the ALJ determined that

7

plaintiff's impairment did not meet or medically equal the severity of any impairment listed in Appendix 1 of the Regulations. (T. 20). At the fourth step, the ALJ found that plaintiff had the residual functional capacity ("RFC"):

> to lift or carry up to 10 pounds frequently or 20 pounds occasionally and sit, stand, or walk for up to 6 hours in an 8 hour work day with normal breaks. (T. 18).

Accordingly, the ALJ found that plaintiff was unable to perform any of his past relevant work as a mechanic or a carpenter. (T. 18). Relying on the medical-vocational guidelines ("the grids") set forth in the Regulations, 20 C.F.R. Pt. 404, Subpt. P, App. 2, the ALJ found that plaintiff has the RFC to perform the full range of light work. (T. 20). Therefore, the ALJ concluded that plaintiff was not under a disability as defined by the Act. (T. 20).

## V.    DISCUSSION

A Commissioner's determination that a claimant is not disabled will be set aside when the factual findings are not supported by "substantial evidence." 42 U.S.C. § 405(g); *see also Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000). Substantial evidence has been interpreted to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* The Court may also set aside the Commissioner's decision when it is based upon legal error. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999).

Plaintiff argues that: (1) the ALJ failed to make a proper credibility determination; (2) the RFC assessment is improper; and (3) the ALJ improperly relied upon the grids and therefore, the Commissioner did not sustain his burden of proof at the fifth step of the sequential evaluation process. (Dkt. No. 7).

## A.    Credibility

Plaintiff argues that the ALJ did not make a proper determination with regard to

plaintiff's statements and allegations of back pain.[10] (Dkt. No. 7, p. 10).   The Commissioner claims that the ALJ properly exercised his discretion and therefore "this Court may not reweigh the evidence and substitute its views".  (Dkt. No.10, p. 16).

When the evidence demonstrates a medically determinable impairment, "subjective pain may serve as the basis for establishing disability, even if such pain is unaccompanied by positive clinical findings or other 'objective' medical evidence[.]" *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).  "Objective medical evidence is evidence obtained from the application of medically acceptable clinical and laboratory diagnostic techniques, such as evidence of reduced joint motion, muscle spasm, sensory deficit or motor disruption." *Casino-Ortiz v. Astrue*, 2007 WL 2745704, at *11, n. 21 (S.D.N.Y. 2007) (citing 20 C.F.R. § 404.1529(c)(2)) .  If plaintiff's testimony concerning the intensity, persistence or functional limitations associated with her pain is not fully supported by clinical evidence, the ALJ must consider additional factors in order to assess that testimony, including: 1) daily activities; 2) location, duration, frequency and intensity of any symptoms; 3) precipitating and aggravating factors; 4) type, dosage, effectiveness and side effects of any medications taken; 5) other treatment received; and 6) other measures taken to relieve symptoms.  20 C.F.R. §§ 404.1529(c)(3)(i)-(vi), 416.929(c)(3)(i)-(vi).  The issue is not whether the clinical and objective findings are consistent with an inability to perform all substantial activity, but whether plaintiff's statements about the intensity, persistence, or functionally limiting effects of her neck and back pain are consistent with the objective medical and other evidence.  *See* Social Security Ruling 96-7p, 1996 WL 374186, at *2.

The ALJ retains discretion to assess the credibility of a claimant's testimony regarding

---

[10] Plaintiff cites to no legal authority to support this argument.

9

disabling pain and "to arrive at an independent judgment, in light of medical findings and other evidence, regarding the true extent of the pain alleged by the claimant." *Marcus*, 615 F.2d at 27; *Snell v. Apfel*, 177 F.3d 128, 135 (2d Cir. 1999) (holding that an ALJ is in a better position to decide credibility). When rejecting subjective complaints of pain, an ALJ must do so "explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief[.]" *Brandon v. Bowen*, 666 F. Supp 604, 608 (S.D.N.Y. 1987). If the Commissioner's findings are supported by substantial evidence, "the court must uphold the ALJ's decision to discount a claimant's subjective complaints of pain." *Aponte v. Secretary, Dept. of Health and Human Servs.*, 728 F.2d 588, 591 (2d Cir. 1984). A reviewing court's role is merely to determine whether substantial evidence supports the ALJ's decision to discount a claimant's subjective complaints. *Aponte*, 728 F.2d at 591 (quotations and other citations omitted).

In this matter, the ALJ found that plaintiff's allegations regarding his limitations were not totally credible. (T. 20). The ALJ stated:

> I have considered the claimant's subjective allegations, including his complaints of pain, as required by 20 CFR 404.1529 and 416.929. I find the claimant's complaints to be out of proportion to the medical evidence and otherwise not credible. I find it significant that the claimant receives no ongoing medical treatment and receives only chiropractic care for his alleged impairments. (T. 18).

Plaintiff argues that his statements of severe, daily exertional and non-exertional limitations show that he cannot engage in substantial gainful activity at any exertional level.[11] (Dkt. No. 7, p. 11). Having reviewed the record, this Court is satisfied that the ALJ utilized the proper legal standards in his analysis of plaintiff's complaints of pain. Further, the Court finds that there is substantial evidence to support the ALJ's decision to discredit plaintiff's

---

[11] Plaintiff does not specify his "daily exertional and non-exertional limitations".

10

complaints of disabling pain. The ALJ referenced plaintiff's testimony regarding his daily activities and abilities and found "his complaints to the [sic] not credible and inconsistent with his established activities of daily living". (T. 18). Plaintiff testified during the hearing that he is able to clean his room, take care of 4 cats, pick up the table after meals, load the dishwasher, vacuum, walk and care for his own personal hygiene. (T. 155, 164). Plaintiff further stated that he is able to drive, go outside, shop and do laundry every 3 weeks. (T. 70).

The ALJ noted that although plaintiff complained of difficulties with his right hand, the alleged impairment did not prevent plaintiff from engaging in full-time employment as a mechanic until 2002. (T. 18). Plaintiff made no complaints of pain in his right hand to Dr. Smith or Dr. Gordon. Moreover, the record is devoid of any notes or reports by any physician or therapist for complaints or treatment relating to plaintiff's right hand.

The ALJ also noted plaintiff's testimony regarding his ability to fish and hunt. (T. 18). The ALJ stated that:

> I find it significant that the claimant purchases a sportsman's license for both hunting and fishing each year. He claims to be in dire financial straits, yet he goes to the expense of purchasing these licenses each year, including the extra expense of purchasing deer tags. According to the claimant's testimony, he eats only one meal a day because he cannot afford more food. Somehow or other this lack of money for food has not prevented him from paying for a license for activities which he testifies he can no longer engage in. The claimant's obvious falsehood on this issue seriously clouds the credibility of all of his other testimony. (T. 18).

The ALJ also noted that plaintiff was not receiving any medical treatment other than chiropractic care once every two weeks. (T. 18, 154). The Court notes that plaintiff's entire medical record consists of 50 chiropractic visits and two visits with an orthopedist. Moreover, at the time of the hearing, plaintiff was not taking any medication for his alleged complaints of pain. (T. 162).

The Court finds that the ALJ employed the proper legal standards in assessing the

11

credibility of plaintiff's complaints of consistent and disabling pain. The decision contains enough detail to enable the Court to discern the reasons on which the ALJ relied in discounting plaintiff's allegations of disabling pain.

**B.     Residual Functional Capacity**

Plaintiff argues that the ALJ's RFC assessment was "improper".[12] (Dkt. No. 7, p. 10). Residual functional capacity is:

> "what an individual can still do despite his or her limitations . . . . Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule."

*Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96-8p, Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims ("SSR 96-8p"), 1996 WL 374184, at *2 (S.S.A. July 2, 1996)). In making a residual functional capacity determination, the ALJ must consider a claimant's physical abilities, mental abilities, symptomology, including pain and other limitations which could interfere with work activities on a regular and continuing basis. 20 C.F.R. § 404.1545(a). The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis. Social Security Ruling 96-8p, 1996 WL 374184, at *1 (S.S.A. July 2, 1996).

The ALJ found that plaintiff has the RFC to perform the demands of the full range of light work.[13] (T. 19). The ALJ determined that plaintiff could lift or carry up to 10 pounds frequently

---

[12] Plaintiff does not cite to any legal authority in support of this argument.

[13] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of

or 20 pounds occasionally and sit, stand, or walk for up to 6 hours in an 8 hour work day with normal breaks. (T. 18). Based upon these findings, as well as plaintiff's age, educational background and work experiences, the ALJ, relying on the grids, concluded plaintiff was not disabled. (T. 19).

Plaintiff argues that the RFC is based upon "an improper credibility assessment". (Dkt. No. 7, p. 11). However, as stated previously, the ALJ properly discounted plaintiff's credibility. Plaintiff claims that Dr. Balagtas found that plaintiff would have difficulty performing activities requiring prolonged sitting and standing.[14] (Dkt. No. 7, p. 11). The ALJ properly considered and assigned weight to Dr. Balagtas opinion. The ALJ found that "although somewhat vague, [the opinions is] well supported by the objective clinical and laboratory finding, and consistent with all evidence in the medical record".[15] (T. 17).

Having reviewed the record, the Court finds that the ALJ's determination regarding plaintiff's RFC is supported by substantial evidence. Dr. Gordon opined that plaintiff could return to light duty on July 2, 2001 with a 25 pound weight restriction.[16] (T. 102). All objective testing including an x-ray, MRI study and myelogram of plaintiff's lumbar spine were essentially normal. (T. 93-94, 104). The only functional assessment of plaintiff's limitations was provided by the consultant for the agency. (T. 96). The consultant found that plaintiff could occasionally lift and/or carry 20 pounds;

---

arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

[14] Although plaintiff presented this argument in the portion of his brief challenging the ALJ's findings on credibility, the argument is more appropriately addressed in regard to the RFC analysis.

[15] Plaintiff does not object to the weight assigned by the ALJ to Dr. Balagtas' opinions.

[16] Plaintiff does not object to the weight assigned by the ALJ to Dr. Gordon's opinions.

13

frequently lift and/or carry 10 pounds; stand and/or walk for 6 hours in an 8 hour workday; and sit for 6 hours in an 8 hour workday. (T. 96). Further, the consultant found that plaintiff had no restrictions with pushing or pulling.[17] (T. 96). Thus, there is ample evidence in the record to support the ALJ's conclusion that plaintiff could perform light work.

**C.     Medical-Vocational Guidelines**

Plaintiff alleges that the ALJ improperly relied upon the grids to deny plaintiff's application for benefits. (Dkt. No. 7, p. 12). Plaintiff argues that the record contains "documented evidence proving that the claimant suffers from both exertional and non-exertional impairments". *Id*. Defendant argues that the ALJ properly considered plaintiff's allegations of non-exertional impairments and explained why he found no significant limitations. (Dkt. No. 10, p. 19).

As explained, since the ALJ determined at step four that plaintiff could not return to prior work, the burden shifted to the Commissioner at step five to show that there is other work that plaintiff can perform. *See Pratt v. Chater*, 94 F.3d 34, 38 (2d Cir. 1996). Generally speaking, if a claimant suffers only from exertional impairments, then the Commissioner may satisfy his burden by resorting to the applicable grids.[18] *Pratt*, 94 F.3d at 39. The grids "take[ ] into account the claimant's residual functional capacity in conjunction with the claimant's age, education and work experience". *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999). Ordinarily, the ALJ need not consult a vocational expert, and may satisfy this burden "by resorting to the

---

[17] Plaintiff does not object to the weight assigned by the ALJ to the opinion of the state agency consultant.

[18] An "exertional limitation" is a limitation or restriction imposed by impairments and related symptoms, such as pain, that affect only a claimant's ability to meet the strength demands of jobs (i.e. sitting, standing, walking, lifting, carrying, pushing, and pulling). 20 C.F.R. §§ 404.1569a(b), 416.969a(b); *see also Rodriguez v. Apfel*, 1998 WL 150981, *10, n. 12 (S.D.N.Y. 1998).

14

applicable medical vocational guidelines (the grids)". *Rosa*, 168 F.3d at 78 (citing 20 C.F.R. Pt. 404, Subpt. P, App.2).

The Second Circuit has held that "the mere existence of a nonexertional impairment does not automatically require the production of a vocational expert or preclude reliance" on the grids.[19] *Bapp v. Bowen*, 802 F.2d 601, 605 (2d Cir. 1986). The testimony of a vocational expert that jobs exist in the economy which claimant can obtain and perform is required only when "a claimant's nonexertional impairments significantly diminish his ability to work-over and above any incapacity caused solely from exertional limitations - so that he is unable to perform the full range of employment indicated by the medical vocational guidelines." *Bapp*, 802 F.2d at 605-06. The use of the phrase "significantly diminish" means the "additional loss of work capacity beyond a negligible one or, in other words, one that so narrows a claimant's possible range of work as to deprive him of a meaningful employment opportunity". *Bapp*, 802 F.2d at 606. Under these circumstances, to satisfy his burden at step five, the Commissioner must "introduce the testimony of a vocational expert (or other similar evidence) that jobs exist in the economy which claimant can obtain and perform." *Rosa*, 168 F.3d at 78 (quoting *Bapp,* 802 F.2d at 604). Therefore, when considering nonexertional impairments, the ALJ must first consider the question - whether the range of work the plaintiff could perform was so significantly diminished as to require the introduction of vocational testimony. *Samuels v. Barnhart*, 2003 WL 21108321, at *12 (S.D.N.Y. 2003).

---

[19] A "nonexertional limitation" is a limitation or restriction imposed by impairments and related symptoms, such as pain, that affect only the claimant's ability to meet the demands of jobs other than the strength demands. 20 C.F.R. §§ 404.1569a(c), 416.969a(c). Examples of nonexertional limitations are nervousness, inability to concentrate, difficulties with sight or vision, and an inability to tolerate dust or fumes. 20 C.F.R. §§ 404.1569a(a), (c)(I), (ii), (iv), (v), 416.969a(a), (c)(I), (ii), (iv), (v); *see also Rodriguez v. Apfel*, 1998 WL 150981, *10, n. 12 (S.D.N.Y. 1998).

In this regard, plaintiff fails to specify his alleged non-exertional impairments and further fails to allege any non-exertional work demands that he cannot perform due to his alleged impairments. Based upon the record, the Court assumes plaintiff is referring to his alleged vision and hand impairments. *See Sergenton v. Barnhart*, 470 F.Supp.2d 194, 202 (E.D.N.Y. 2007) (quoting *Cosgrove v. Barnhart*, 2004 WL 1171772 at *5, (S.D.N.Y. 2004)) (holding that vision impairments are considered non-exertional limitations); *see also Hufana v. Apfel*, 2000 WL 1210826, at *1 (E.D.N.Y. 2000) (concluding that difficulty with manipulation is a non-exertional limitation).

Although the ALJ did not expressly state that plaintiff's vision and hand pain were insignificant non-exertional impairments, the ALJ directly addressed these alleged impairments in detail. *See Niven v. Barnhart*, 2004 WL 1933614, at *8 (S.D.N.Y. 2004) (holding that although the ALJ did not state that plaintiff's impairments were insignificant, the ALJ directly addressed the impact of the non-exertional impairments). The ALJ discussed Dr. Gabriels's examination of plaintiff and found that:

> Although the claimant's visual impairment would not constitute a severe impairment in and of itself within the meaning of the Social Security regulations, I have considered any minor restrictions resulting from this vision problems [sic] in arriving at the claimant's residual functional capacity discussed in detail below. (T. 17).

Based upon the evidence, the ALJ concluded:

> The claimant's minor vision problem in the right eye does not rise to a level consistent with the requirements of any of the eyesight listings. (T. 17).

The ALJ also discussed plaintiff's complaints of pain in his right hand and noted that Dr. Balagtas' examination of plaintiff's right upper extremity revealed no objective findings. (T. 16). The ALJ stated that "[i]t should be noted that despite this injury the claimant had been able to

work as a mechanic until 2002". (T. 16).   The ALJ further discussed the lack of evidence of "any recent dramatic changes in the claimant's ability to use his right hand". (T. 18).

The record does not support a finding that any of these impairments, together or alone, significantly limit plaintiff's ability to work or that plaintiff's complaints of pain are credible. Accordingly, the Court finds that the ALJ properly considered plaintiff's vision and complaints of right hand pain and determined that his range of work was not significantly diminished to deprive him of meaningful employment.  As such, the ALJ did not err in failing to request the presence of a vocational expert to determine whether plaintiff could perform light work.  *Elias v. Apfel*, 54 F.Supp.2d 172, 178 (E.D.N.Y. 1999) (holding that the ALJ specifically noted that plaintiff's symptoms were not of sufficient severity, frequency, and duration so as to cause disability and significantly diminish his ability to perform light work).

## VI.   CONCLUSION

Based upon the foregoing, it is hereby

**ORDERED** that the decision denying disability benefits is **AFFIRMED**; and it is further

**ORDERED** that the defendant's motion for judgment on the pleadings is **GRANTED**; and it is further

**ORDERED** that pursuant to General Order # 32, the parties are advised that the referral to a Magistrate Judge as provided for under Local Rule 72.3 has been rescinded, as such, any appeal taken from this Order will be to the Court of Appeals for the Second Circuit; and it is further

**ORDERED** that the Clerk of Court enter judgment in this case.

**IT IS SO ORDERED.**

Dated:  February 10, 2009
         Syracuse, New York

Norman A. Mordue
Chief United States District Court Judge

17